IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Lakenyata Maxwell,<br><br>              Plaintiff,<br><br>   vs.<br><br>Housing Authority, *also known as Columbia Housing Authority*; Candice Tollison; Laquile Bracey; Deana Mills; Barry Hall; Southern Development Management Company; and Ashley Lewis,<br><br>              Defendants. | Civil Action No. 3:23-cv-6948-CMC<br><br>**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT** |

In this 42 U.S.C. § 1983 action, Plaintiff Lakenyata Maxwell ("Maxwell" or "Plaintiff") asserts claims arising from the termination of her federal housing assistance. In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 (B)(2)(c), DSC, this matter was referred to United States Magistrate Judge Paige J. Gossett for pre-trial proceedings. It is before the court on Defendants' motions for summary judgment. Dkt. Nos. 247, 255. Plaintiff filed a joint response in opposition (Dkt. No. 262) and Defendants replied (Dkt. Nos. 278, 279). Plaintiff filed sur replies. Dkt. No. 281, 282.

On April 30, 2026, the Magistrate Judge entered a Report and Recommendation ("Report") recommending the court grant Defendants' summary judgment motions. Dkt. No. 286. It also denied several motions filed by Plaintiff. The parties were notified of the procedures and requirements for filing objections to the Report and the serious consequences if they failed to do so. Plaintiff filed objections (Dkt. No. 291) and a "Notice of Incorporation of CHA Internal

Transaction Log." Dkt. No. 292. Defendants filed neither objections nor a reply to Plaintiff's objections. This matter is now ripe for resolution.

## BACKGROUND

### 1. Factual Background

Plaintiff was a resident of Capital Heights, an affordable housing development owned by Defendant Columbia Housing Authority ("CHA") and managed by Defendant Southern Development Management Company ("Southern Development"). Plaintiff was the recipient of a housing voucher through the Housing Choice Voucher Program, and utilized her voucher at Capital Heights. Defendant Mills is Southern Development's Director of Columbia Housing Authority Properties, Defendant Lewis is a property manager for Southern Development, and Defendant Tollison is the Vice President of the Housing Choice Program. Defendant Bracey is the Columbia Housing Cares Coordinator/Hearing Officer for CHA.

On November 2, 2023, Tollison issued a letter entitled "Notice of Intent to Terminate" to Plaintiff, advising her of CHA's intent to terminate her housing voucher. Dkt. No. 247-1 at 19. The letter noted Plaintiff failed to comply with the Family Obligations required by the voucher, specifically "4: D3 Commit fraud, bribery, or any other corrupt or criminal act in connection with the program." *Id.* The specific actions alleged to be in violation included submitting fraudulent paperwork on October 11, 2022, to add her deceased minor son to the household when he passed

2

away on May 7, 2021; receipt of PPP[1] loans in 2021 for a business that had not been reported to CHA; an unauthorized person living in the unit; and an additional PPP loan tied to Plaintiff's address for an individual not on the lease. *Id.* The notice informed Plaintiff of her right to request an informal hearing. *Id.*

On November 4, 2023, Plaintiff requested an informal hearing regarding the notice to terminate her voucher. Dkt. No. 247-1 at 21. The hearing was held December 1, 2023, with Bracey as the hearing officer. Dkt. No. 247-1 at ¶ 8. Plaintiff was present along with her mother, Linda Maxwell, and sister, Shajuana Maxwell. Present as representatives of CHA were Gloria Warner, Regional Manager, and Tollison. *Id.*

At the hearing, CHA withdrew the ground alleging an unauthorized adult living in the unit, but Tollison presented evidence regarding the remaining violations, including Plaintiff's recertification records. *Id.* at ¶ 10. Plaintiff testified, denying the allegations and asserting certain handwriting on the recertification documentation was not hers. *Id.* at ¶¶ 11, 13. During the hearing, Bracey noticed the recertification documents did not include all pages and requested Tollison provide a complete copy of the documents and information related to alleged overpayment of utilities[2]. *Id.* at ¶ 14.

---

[1] The Paycheck Protection Program ("PPP") loan refers to a COVID-19 era relief initiative established by the CARES Act to help small businesses retain workers.

[2] Although potential overpayment of utility supplemental assistance to Plaintiff was raised at the hearing, Bracey noted this was not a ground for termination of her housing voucher and was not included in the decision to terminate. *Id.* at ¶ 9, 16.

After the hearing, Tollison provided Bracey with the supplemental information requested. *Id.* at 15. On December 15, 2023, Bracey and Warner met with Plaintiff to discuss the decision to uphold the termination of Plaintiff's housing voucher. *Id.* at ¶ 16. Bracey made the following findings of fact: (1) Plaintiff's son Michael passed away in 2021, yet on June 14, 2022, Plaintiff completed her annual recertification and included Michael's name as living in the home; (2) on October 6, 2022, Plaintiff received notice from CHA to provide documentation for Michael and her newborn son based on her recertification paperwork; (3) Rent Haven added Michael to the lease; (4) Plaintiff stated she never lived on Lorick Circle despite a police report made by her on July 18, 2018, listing Lorick Circle as her address; (5) two days after receiving notification of intent to terminate her housing voucher, Plaintiff filed a police report indicating her identity was stolen and someone used her name for a PPP loan; (6) two days after that, Plaintiff terminated the business Lash Pro with the State; (7) on August 2, 2023, Plaintiff completed another annual recertification without Michael's name. Dkt. No. 247-1 at 23-24. The Notice of Decision provided "[b]ased on the evidence presented (testimonies and notes from the file), the hearing committee has decided to uphold the decision of Columbia Housing to terminate voucher assistance with the Housing Choice Voucher Program." *Id.* at 24.

## 2. **Procedural History**

Plaintiff filed this lawsuit pro se on December 28, 2023, alleging violations of 42 U.S.C. § 1983, for deprivation of due process. Dkt. No. 1. She filed an Amended Complaint (Dkt No. 26) on March 12, 2024, and a Second Amended Complaint, the currently operative pleading, on

August 16, 2024.[3] Dkt. No. 75. Because Plaintiff filed this lawsuit pro se, her case was referred to United States Magistrate Judge Paige J. Gossett for pre-trial proceedings in accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 (B)(2)(e). Plaintiff filed multiple motions for temporary restraining orders and preliminary injunctions, all of which were denied. Dkt. Nos. 3, 41, 67, 98, 99, 157, 158, 185, 189, 193, 194, 203, 207, 212.

On December 15, 2025, a motion for summary judgment was filed by CHA, Bracey, and Hall ("the CHA Defendants"). Dkt. No. 247. After a short extension of time, Southern Development, Lewis, and Mills ("the SD Defendants") also filed a summary judgment motion. Dkt. No. 255. Because Plaintiff is proceeding pro se, in accordance with *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised her of dismissal procedures and possible consequences if she failed to respond to the summary judgment motions. Dkt. Nos. 249, 257. Plaintiff filed a combination response in opposition to both motions. Dkt. No. 262. The SD Defendants filed a reply (Dkt. No. 278), as did the CHA Defendants (Dkt. No. 279). Without seeking leave of court, Plaintiff filed sur replies. Dkt. Nos. 281, 282.

The Magistrate Judge entered an Order and Report and Recommendation ("Report") on April 30, 2026, recommending Defendants' motions for summary judgment be granted. Dkt. No. 286.[4] The Magistrate Judge advised the parties of the procedures and requirements for filing

---

[3] Plaintiff filed a motion for leave to file a Third Amended Complaint on May 21, 2025, which was denied. Dkt. Nos. 175, 229.

[4] She also denied several pending motions filed by Plaintiff in the interim.

objections to the Report and the serious consequences if they failed to do so. Plaintiff filed objections and a Notice. Dkt. Nos. 291, 292. This case is now ripe for resolution.

## STANDARD

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the court. *See Mathews v. Weber*, 423 U.S. 261 (1976). The court is charged with making a *de novo* determination of any portion of the Report of the Magistrate Judge to which a specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or recommit the matter to the Magistrate Judge with instructions. *See* 28 U.S.C. § 636(b). The court is required to review the Report only for clear error in the absence of an objection. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (stating that "in the absence of a timely filed objection, a district court need not conduct a *de novo* review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.") (citation omitted).

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In ruling on a motion for summary judgment, the court views "all facts and reasonable inferences

6

in the light most favorable to the nonmoving party." *Ballengee v. CBS Broad., Inc.*, 968 F.3d 344, 349 (4th Cir. 2020).

The moving party bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party does so, the burden shifts to the nonmoving party to "go beyond the pleadings" and come forward with "specific facts showing that there is a genuine issue for trial." *Id.* at 324 The nonmoving party must do so by offering "sufficient proof in the form of admissible evidence" rather than relying solely on the allegations of her pleadings. *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 216 (4th Cir. 2016). To withstand summary judgment, "the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." *Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013).

## DISCUSSION

### A. Due Process Claim

The Magistrate Judge recommends granting both the CHA Defendants' and SD Defendants' motions for summary judgment because Plaintiff received the process required. Dkt. No. 286 at 7-13. Specifically, Plaintiff received timely and adequate notice of the reasons for the proposed termination, an effective opportunity to defend, and the opportunity to retain an attorney. *Id.* at 7. The Magistrate Judge found Bracey was not biased and the final decision was based on evidence adduced at the hearing and was delivered in writing. *Id.* at 8. The Report also found the

7

decision was supported by substantial evidence as required by federal law. *Id.* at 9 (citing *Clark v. Alexander*, 85 F.3d 146, 151 (4th Cir. 1996)).

Plaintiff filed myriad objections to the Report. Dkt. No. 391. As an initial matter, she contends the court must hold her to less stringent standards and liberally construe her pleadings, as a pro se plaintiff. *Id.* at 3.[5] However, the court cannot be an advocate for a pro se party. *United States v. Wilson*, 699 F.3d 789, 797 (4th Cir. 2012) ("Although courts must liberally construe the claims of *pro se* litigants, the special judicial solicitude with which a district court should view pro se filings does not transform the court into an advocate.").

      1.   *Objections 1 and 2: Report failed to address "video recordings" submitted by Plaintiff*

Plaintiff first objects to the Report's failure to address her submitted "video recordings" filed with her response in opposition to summary judgment (Dkt. No. 263 (non-standard item received, USB flash drive, from Lakenyata Maxwell)). She asserts courts are required to consider all evidence in the record when ruling on summary judgment, and explains her belief the videos were not considered because they contradict Defendants' evidence of record, namely, the Bracey affidavit. Dkt. No. 291 at 5. She details the differences between the videos and the Bracey affidavit, and requests the court perform a de novo review of them. *Id.* at 5-6. However, she acknowledges

---

[5] The court notes cases cited by Plaintiff, including *Erickson v. Pardus*, 551 U.S. 89 (2007) and *Gordon v. Leeke*, 574 F.2d 1147 (4th Cir. 1978), hold the court must liberally construe pro se *pleadings*, not necessarily all documents filed by pro se parties. And it does not mean cases cannot be dismissed at a later stage, such as summary judgment, if the standard is met. *See Erickson*, 551 U.S. at 94 ("Whether petitioner's complaint is sufficient in all respects is a matter yet to be determined . . .").

the video recordings do not capture the entire hearing because her "phone battery died before the hearing concluded." *Id.* at 6. She contends the portions available capture "every critical admission identified above" and the portion not captured is described in the Bracey affidavit. *Id.*

Her second objection is similar – she argues the Magistrate Judge abused her discretion by ignoring the content of the videos, which she asserts proves Bracey's affidavit contains false statements. *Id.* at 6. Plaintiff contends Bracey's finding, that Plaintiff admitted others used her address for PPP loans as evidence of fraud, was "demonstrably false" as proven by the "verbatim hearing transcript." *Id.* at 7. She again contends the videos show Bracey's affidavit is "false on multiple additional points" and notes "Defendants abandoned the Bracey affidavit after Plaintiff submitted the videos yet the R&R still relies on it." *Id.* at 8-9. Finally, she submits controlling authority "forbids" ignoring video evidence that contradicts the credited version of events, citing *Scott v. Harris*, 550 U.S. 372 (2007). *Id.* at 10.

The court has reviewed what appear to be five video clips of the December 1, 2023, hearing regarding Plaintiff's housing voucher. Dkt. No. 263. These videos were evidently taken on a cell phone that was placed faced up on a table at the hearing. The ceiling is shown most often, with a figure in the frame at certain points wearing clear glasses and a hat. There is no identification of who is speaking at any given time or even who is in the room.

As recognized by the Fourth Circuit, *Scott* held when a video "quite clearly contradicts the version of the story" told by a party ... "so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Witt v. W. Virginia State Police, Troop 2*, 633 F.3d 272, 276 (4th Cir. 2011) (citing *Scott*, 550 U.S. at

378, 380). Although Plaintiff alleges that is what occurred here, the court disagrees. As in *Witt*, the videos do not "clearly" or "blatantly" contradict Defendants' version of the hearing. 633 F.2d at 277. "Rather, [they] provide little assistance in resolving the parties' disputes as to the facts," as "[i]t is difficult to decipher from reviewing the video[s] the true sequence of events." *Id.* Here, there is no information as to who is speaking, the videos do not capture the speaker at any given time, and the speakers are not identified. Further, the videos "fail to capture" a portion of the hearing. *See id.* [6]

Finally, the court finds the videos are not properly admissible evidence, as its authenticity has not been established. Federal Rule of Evidence 901(a) notes "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must provide evidence sufficient to support a finding that the item is what the proponent claims it is." One way to do this is "testimony of a witness with knowledge." Fed. R. Evid. 901(b)(1).

Although a proponent's burden of proof on the preliminary question of authentication is low, Plaintiff has put forward no evidence showing the videos are what she claims they are. She did not submit an affidavit regarding the authenticity of the videos or any information about them. [7]

---

[6] Although Plaintiff claims this is not a problem because the Bracey affidavit is correct at the end and "Plaintiff does not need the video to prove what Bracey said at the end of the hearing Bracey admitted it under oath," the court finds this questionable as Plaintiff disputes essentially the entirety of the affidavit until the portion not covered by the videos.

[7] The court notes Plaintiff did submit a declaration, as well as declarations by her sister and mother, who were present at the hearing. However, no declaration discussed the video evidence or attempted to authenticate them. *See* Dkt. No. 262-17.

10

Further, although she references a "verbatim transcript," (Dkt. No. 262-11) she provides no information about where this transcript came from, who transcribed it, or how it was determined who was speaking. Accordingly, the transcript suffers from the same authentication problems as the videos.

Finally, the court addresses Plaintiff's assertion Defendants "abandoned" the Bracey affidavit after she submitted the videos, and the Report improperly relied upon it. This is an incorrect interpretation of what occurred. Plaintiff filed a motion in limine seeking to exclude what she argues is inadmissible evidence, including the Bracey affidavit. Dkt. No. 256. In response, the CHA Defendants noted they would not seek to enter the Bracey affidavit at a potential trial, as Defendant Bracey would testify at trial. Dkt. No. 271 at 9 (emphasis added). However, they assert the affidavit is admissible for purposes of summary judgment. *Id.* The court finds the CHA Defendants have not "abandoned" the Bracey affidavit for purposes of summary judgment, and the Report did not err by relying on it.

For these reasons, the court overrules Plaintiff's Objections 1 and 2.

2. *Objection 3: Reconvene Hearing*

Next, Plaintiff objects to the Report's finding there was not a due process violation because Bracey told Plaintiff she would be brought back in once Bracey had the full file related to Plaintiff's voucher termination. Dkt. No. 291 at 10. However, after Bracey received the entire file from Tollison, she issued a termination decision without reconvening the hearing, which Plaintiff alleges was in violation of her due process rights and HUD regulations. *Id.* at 10-11.

11

The Report found there was no due process violation because Plaintiff was notified of the basis of the request for additional information while the hearing was in progress; specifically, the missing pages in Plaintiff's recertification paperwork and information related to alleged utility overpayments. Dkt. No. 286 at 8-9. Accordingly, the Report determined there had been no ex parte communication and thus no due process violation.

The court agrees. Although Plaintiff now contends her due process rights were violated because the hearing was not reconvened, Plaintiff had an opportunity at the hearing to present evidence regarding the alleged violations against her, as required by law, and did so. The issues regarding recertification were discussed at the hearing, as evidenced by both the Bracey affidavit and Plaintiff's declaration, and any alleged overpayment of utilities was not utilized by CHA as a reason to terminate the voucher. Plaintiff cites 24 C.F.R. § 982.555(e)(5) as requiring the hearing officer's decision to be "based on the evidence presented at the hearing." However, § 982.555(e)(5) states, in its entirety: "(5) Evidence. The PHA and the family must be given the opportunity to present evidence, and may question any witnesses. Evidence may be considered without regard to admissibility under the rules of evidence applicable to judicial proceedings." The court finds the process here complied with (e)(5). Plaintiff had the opportunity to present evidence and question witnesses at the hearing. In an abundance of caution, the court has also considered § (e)(6), Issuance of Decision, which states

> The person who conducts the hearing must issue a written decision, stating briefly the reasons for the decision. Factual determinations relating to the individual circumstances of the family shall be based on a preponderance of the evidence presented at the hearing. A copy of the hearing decision shall be furnished promptly to the family.

12

The court finds this regulation was met as well. Plaintiff was aware at the hearing her recertification documents were at issue. She was allowed to present evidence on this issue, and the hearing officer made a factual determination based on a preponderance of the evidence. The recertification documents were presented at the hearing and Plaintiff testified and presented evidence about them. No regulation requires a second hearing, and the Report sufficiently addressed any alleged ex parte communications. Accordingly, Plaintiff's Objection 3 is overruled.

3. <u>*Objection 4: Credibility Determination regarding Handwriting*</u>

Plaintiff objects to the Report's determination of her argument that some of the handwriting on the recertification form was not hers. Dkt. No. 291 at 12. The Report found Bracey attested she "reviewed the documentation and found the signature and other handwriting listing members in the household appear to belong to Ms. Maxwell." Dkt. No. 286 at 10 (citing Bracey Aff. ¶ 11, Dkt. No. 247-1 at 4). It noted Plaintiff offered no evidence that she did not fill out the form herself, and her "shifting position on this matter further undermines such an argument." *Id.* at 11.

Plaintiff's objections argue Bracey is not a handwriting expert, and a lay witness' opinion on handwriting "has no foundation under Fed. R. Evid. 901 and cannot resolve a disputed question of fact on summary judgment." Dkt. No. 291 at 12. She also contends she testified under oath the handwriting is not hers, which directly contradicts the Bracey affidavit, and the court cannot resolve issues of credibility on summary judgment. *Id.* Third, she submits the recertification form was altered and the Report did not address these issues.

13

The court finds, based on the applicable standard for review of a hearing officer's decision, the Report properly reviewed the handwriting argument. Neither the Magistrate Judge nor this court conducts a de novo review of the hearing officer's decision. Instead, the court must satisfy itself due process was provided in a pre-termination of benefits hearing by ensuring the participant had "timely and adequate notice detailing the reasons for a proposed termination," "an effective opportunity to defend by confronting [and cross-examining] any adverse witnesses and by presenting his own arguments and evidence orally," and "must be allowed to retain an attorney if he so desires." *Goldberg v. Kelly*, 397 U.S. 254, 267-70 (1970); *see also* 24 C.F.R. § 928.555. In addition, the decisionmaker must be impartial and the "decisionmaker's conclusion as to a recipient's eligibility must rest solely on the legal rules and evidence adduced at the hearing." *Goldberg*, 397 U.S. at 271. The C.F.R. specifically notes evidence may be considered without regard to admissibility under the rules of evidence applicable to judicial proceedings. §982.555(e)(5).

Accordingly, unless one of these requirements of due process is violated, the court does not overturn a hearing officer's decision, including on issues of evidence or credibility, if it is supported by substantial evidence. "Plaintiff's argument [that the district court is obligated to make its own findings of fact] misconstrues the nature of the informal hearing which is intended to provide pretermination review of housing authority decisions to terminate housing assistance benefits." *Clark v. Alexander*, 85 F.3d 146, 150 (4th Cir. 1996). Deference must be shown to the factfinding of local housing authorities. *Id.* at 151. Plaintiff has received a termination hearing that comports with the requirements of due process as set out in *Goldberg.* CHA's original decision to

terminate was validated by an administrative adjudicative process. "That established, it follows that due process does not require an opportunity to relitigate the issues previously settled." *Id.* Although the level of deference shown to the fact findings of a hearing officer is not absolute, it is significant, and the court must only be satisfied the hearing officer's conclusions are supported by substantial evidence. *Id.* at 151-52.

The court finds the hearing officer's decision is supported by substantial evidence introduced at the hearing, and that Plaintiff had an opportunity to rebut and present her own evidence. Plaintiff's Objection 4 is overruled.

    4.   *Objection 5: Victoria Taylor Instruction/Intent*

Plaintiff objects, asserting she submitted into evidence at the administrative hearing a written notice from CHA staff member Victoria Taylor, instructing Plaintiff to complete an add-member form for her sons, including her deceased son Michael. Dkt. No. 291 at 12-13 (citing Dkt. No. 262-6). She then submitted the paperwork adding Michael and her newly born son. Plaintiff contends this instruction negates the intent element and shows she did not submit the paperwork with fraudulent intent. She argues this is an error in the Report because the Magistrate Judge "ignored" this instruction by CHA employee Taylor.

Plaintiff's argument that she was just following instructions when she added her deceased son Michael is belied by the record timing (as noted by the Magistrate Judge). In June 2022, Plaintiff submitted a recertification form on which she included all four sons, beginning with Michael Thomas, age 17. Dkt. No. 262-5 at 2. In October 2022, in apparent response to that form, Victoria Taylor issued a letter requesting Plaintiff provide "add member forms for Michael

15

Thomas and Baylen Dixon." Dkt. No. 262-6 at 2. Accordingly, it appears Plaintiff initiated adding her deceased son Michael, and the CHA employee followed up to ensure all information was received – the initial action was not undertaken by Victoria Taylor "instructing" her to add Michael.

Accordingly, the court finds hearing officer Bracey's decision on this issue supported by substantial evidence. Plaintiff Objection 5 is overruled.

5. *Objection 6: PPP Loan Permission*

Plaintiff objects to the Report crediting Bracey's finding Plaintiff gave permission for PPP loans at her address "when the hearing video proves Plaintiff denied this." Dkt. No. 291 at 13. Plaintiff testified the PPP activity was the result of identity fraud and submitted evidence in support, including a police report filed November 3, 2023, documentation from the Secretary of State that Plaintiff dissolved Lash Pro, evidence she never resided at 2320 Lorick Avenue as listed on the PPP loan documents, and an earlier police report from November 2016 in which Plaintiff reported identity theft. *Id.* at 14.

The Report found Bracey considered Plaintiff's evidence as presented above and weighed it with the evidence provided by Tollison. Dkt. No. 286 at 11. The Magistrate Judge concluded she could not say Bracey's conclusion was not supported by substantial evidence. *Id.* at 12. As noted above, the court's function is not to weigh evidence or credibility, but to ensure due process was

16

given and the hearing officer's decision supported by substantial evidence. The court agrees the requirements of due process are met here.[8]

### 6. *Objections 7, 12, and 17: PPP Loan Documents*

Plaintiff complains Defendants did not attach the PPP loan documents as exhibits to the summary judgment motions, and therefore the Magistrate Judge should not have credited the PPP loan applications as substantial evidence. Dkt. No. 291 at 17. She asserts they were not included because they are "unauthenticated Google printouts bearing a property manager's handwriting that would expose the retaliatory origin of the accusation" and so Defendants sought to "conceal by omitting them." *Id.* She submits the PPP documents "bear handwriting attributed to Defendant Deana Mills the same property manager who had a documented retaliatory motive against Plaintiff" and therefore believes the documents with Mills' handwriting "prove that she was the source of the fraud accusation and directly contradict Defendants' claim that Mills had no involvement in the voucher termination proceedings." *Id.* Plaintiff contends "crediting" these allegations as "substantial evidence of fraud" is "reversible error of the highest order." *Id.* at 18.

In Objection 12, Plaintiff raises address discrepancies between 2030 Lorick Circle (Plaintiff's previous address from a police report) and 2320 Lorick Avenue (the address to which

---

[8] As for Plaintiff's argument the PPP loan address was 2320 Lorick Avenue, not her voucher address of 118 Cardamon Court, the record evidence shows the Lash Pro business began when Plaintiff resided at her previous address on Lorick Avenue. Further, although Plaintiff argues a "PPP loan at a different address is not fraud on a voucher tied to a different address," the issue was that Plaintiff did not report a business or income.

17

Lash Pro and the PPP loans were registered), and argues neither of them are the address at issue: Cardamon Court, where she lived at the time of her voucher termination. *Id.* at 26. In a later objection, Plaintiff notes PPP loans are not income and thus there is no fraud on income reporting grounds. *Id.* at 33. She also contends Defendants acknowledge differences in addresses on Lorick Circle between the PPP loan documentation and the police report, thus creating a factual error in the Report requiring "correction by this court." *Id.* [9]

At the outset, the court notes PPP documentation was provided by Plaintiff in the attachments to her Second Amended Complaint, and therefore was already part of the record at the time the summary judgment motions were filed. The record documents were cited to as such by Defendants in support of summary judgment. *See, e.g.*, Dkt. No. 75-3 at 19-22.

Again, as above, it is not the function of the court to determine whether Plaintiff committed fraud or whether her voucher should be terminated. The court must determine whether due process was received and if there is substantial evidence to support the hearing officer's determination. The court finds the hearing officer properly accepted evidence from Plaintiff and weighed it prior to making her decision. CHA and Bracey acknowledged the PPP loan proceeds are not considered income, but the existence of an unreported business in Plaintiff's name raised the possibility of unreported income. Further, the hearing officer noted Plaintiff reported identity theft and dissolved the business days after being informed it was a potential reason to terminate her housing voucher.

---

[9] The court acknowledges slight differences between the addresses on Lorick from different sources; however, this distinction does not alter any of the court's legal conclusions.

18

Accordingly, the court agrees with the Magistrate Judge it cannot find the hearing officer's decision is not supported by substantial evidence. Plaintiff's Objections 7 and 17 are overruled.

       7.   *Objection 8: No Evidence of Financial Harm*

Plaintiff asserts there was no evidence of financial harm produced by Defendants in the form of Enterprise Income Verification reports, overpayment calculations, improper subsidy amounts, or any financial impact analysis. Dkt. No. 291 at 18. She contends termination of housing assistance without evidence of actual financial harm or improper benefit is "arbitrary and inconsistent with federal due process protections." *Id.* at 19 (citing *Goldberg* and *Matthews v. Eldridge*, 424 U.S. 319 (1976)).

The court can find no authority for the proposition that termination of a housing voucher without evidence of actual financial harm violates due process. The cases cited by Plaintiff do not support this argument. The Report did not address this issue because it was not previously raised and is not a requirement for due process in this context. Plaintiff's Objection 8 is overruled.

       8.   *Objection 10: Recertification Form Alteration/Complete File*

Plaintiff argues the Report should not treat the recertification form as reliable evidence of fraud, as the hearing transcript "proves Tollison admitted she altered the recertification document" when she stated "I think I took names off of the sheet that was in here of, like, who processed them." Dkt. No. 291 at 21. She contends this prevented her from identifying the processor and questioning whether CHA staff contributed to any inaccuracies, as well as concealed information that might have corroborated Plaintiff's account. *Id.* She also submits the transcript proves CHA had no paperwork showing Plaintiff requested Michael's removal in 2021, so CHA cannot

19

establish Plaintiff knew Michael had been removed when she re-added him in 2022. "Without knowledge of removal," she contends, "there can be no fraudulent intent in listing him."

As noted above, the court finds there is substantial evidence to uphold the hearing officer's decision. Hearing Officer Bracey heard the testimony and received the evidence, including the recertification document, at the hearing. She was aware of Tollison's statements, including that she removed names of the processor(s) from the face of the document. In addition, she was aware there was no paperwork in which Plaintiff requested Michael's removal prior to re-adding him. Despite this, Bracey weighed the evidence and found Plaintiff's voucher should be terminated. The court has found substantial evidence support's Bracey's finding and due process was received. Plaintiff's Objection 10 is overruled.

9. *Objection 13: Tollison's Termination and lack of Affidavit*

Plaintiff next objects to Defendants' failure to submit an affidavit from Tollison in support of summary judgment. Dkt. No. 291 at 27. She contends Defendants "cannot selectively use Tollison's in-hearing conduct to support the termination while shielding her from affidavit scrutiny" and requests an adverse inference against Defendants. *Id.* (citing *Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 156 (4th Cir. 1995)). She also submits Tollison was terminated from her position at CHA shortly after the December 1, 2023, hearing. She asserts this is "circumstantial evidence that Tollison's conduct at the hearing presenting unauthenticated documents sourced from Google, withdrawing allegations mid-hearing for lack of proof, concealing the sources of evidence when questioned by hearing officers, and admitting the investigation started from reading an obituary was found by her own employer to be improper." *Id.* at 27-28.

20

The court has broad discretion to permit a jury to draw an adverse inference from a party's failure to present evidence. *Vodusek*, 71 F.3d at 155. However, a party need not support summary judgment by any particular evidence, as long as its position is supported by admissible evidence. *See generally*, Fed. R. Civ. P. 56. Accordingly, Defendants need not produce an affidavit from Tollison if they believe their position(s) are sufficiently supported by other record evidence. Bracey was at the hearing and was able to write an affidavit based on her personal knowledge of what occurred. *See* Rule 56(c)(4). This is not a case, as occurred in *Vodusek,* where evidence was destroyed and unavailable and therefore an adverse inference was appropriate.

In addition, the court will not engage in speculation regarding Tollison's alleged firing from CHA. Accordingly, Plaintiff's Objection 13 is overruled.

## B. **Retaliation Claim**

### 1. *Objection 9: Retaliation*

Plaintiff objects to the Report's conclusion to recommend summary judgment on her retaliation claim. Dkt. No. 291 at 19. She contends the "documented, evidence-backed timeline submitted across multiple filings" demonstrates retaliation, at least by the CHA Defendants. *Id.* She alleges she reported Defendant Mills to CHA for rent mismanagement, missing rent payments, and unsafe housing conditions, after which Tollison ran the "deceased tenant report" that revealed Plaintiff's son Michael was listed as an occupant of her unit. *Id.* She asserts this report is supposed to be run monthly, and Michael's status should have been discovered earlier. She contends this is the "smoking gun on retaliatory motive." *Id.* at 20. Plaintiff submits the Report did not address the deceased tenant report triggered by Plaintiff's complaints or Mills' "admitted role in supplying

21

documents to CHA." *Id.* at 21. She asserts there is temporal proximity between protected activity and adverse action sufficient to raise an inference of retaliation, and thus summary judgment was improper. *Id.*

In the Report, the Magistrate Judge recommended granting summary judgment to both sets of Defendants on the retaliation claim, as Plaintiff failed to show but-for causation. Dkt. No. 286 at 12-14. As to the CHA Defendants, the only alleged adverse action was termination of the housing voucher, and CHA provided non-retaliatory reasons for terminating the voucher and evidence supporting those reasons. *Id.* at 13. For the SD Defendants, the adverse action appears to be a notice of non-renewal of Plaintiff's lease. The Report considered the timing issue Plaintiff now raises, and found Plaintiff's own exhibits show termination of her lease was based on her false accusations against Mills' grandchildren, which SD found to constitute interference and harassment of management. *Id.* at 14.

The court agrees with the Magistrate Judge Plaintiff has failed to prove retaliation against either set of Defendants. Her so-called "smoking gun," that the tenant death report was not run until the month after Plaintiff reported Mills, does not change the fact that Plaintiff listed a deceased family member as living in the unit. Plaintiff is unable to establish her housing voucher would not have been terminated but-for her reporting Mills to CHA, as CHA had multiple reasons for terminating her voucher as upheld by the hearing officer. Similarly, the evidence supports that Plaintiff's eviction from SD had begun prior to her accusations towards Mills' grandchildren, such that a jury could not reasonably find she was retaliated against for engaging in a constitutionally protected activity.  Plaintiff's Objection 9 is overruled.

22

C. **Additional Objections**

1. *Objections 11, 15, and 18: Discovery Issues*

Plaintiff filed multiple objections regarding discovery issues. First, in Objection 11, she contends the Report "accepts Defendants' characterization of Plaintiff as discovery noncompliant," which she asserts is contradicted by the procedural record. Dkt. No. 291 at 22. She argues she complied with all court-ordered discovery obligations; Defendants never filed a motion to compel or raised discovery deficiencies within the discovery period[10]; the court already found Defendants were not entitled to an extension of the discovery deadline because they failed to demonstrate they diligently pursued discovery during the discovery period; and Defendants' complaints about Plaintiff's participation in discovery are "tactical" in nature. *Id.* at 24-25.

Next (Objection 15), Plaintiff contends the Report penalized Plaintiff for alleged discovery deficiencies that were not raised during the discovery period, but did not penalize Defendants for failing to produce certain evidence in support of summary judgment, including EIV reports, PPP documents, and an affidavit from Tollison. *Id.* at 30. She also complains Defendants filed their summary judgment motions on the last day of the deadline as set forth in the scheduling order.

In Objection 18, Plaintiff references an email chain regarding scheduling her deposition in which she requested additional time to respond until she received a ruling on her motion for reconsideration filed in 2025. *Id.* at 34. She contends this shows she was not refusing to schedule

---

[10] The court also notes there were motions filed based on discovery issues during the discovery period. See Dkt. Nos. 109, 110.

23

a deposition, but merely requested a brief postponement, and Defendants never pursued her deposition again. She also explains the SD Defendants admitted they did not receive her flash drive with videos on it, yet attacked the videos as inadmissible. *Id.*

It appears from the Report there were no findings against Plaintiff based on discovery issues. The only discovery issues in the Report are as follows: the Magistrate Judge noted the CHA Defendants moved to dismiss the Second Amended Complaint based on Plaintiff's failure to comply with a court order of March 19, 2025; however, the Report did not reach the merits of that argument, so no adverse action was taken based on failure to comply with a discovery order. Dkt. No. 286 at 6 n.2. Second, although the Report acknowledged Plaintiff failed to produce tax records in support of her claim that she has not reported income other than that disclosed to CHA, despite CHA's discovery requests, the Report did not make any findings based on this failure. *Id.* at 12. Finally, the Report denied Plaintiff's Motion for Leave to Amend to file a Third Amended Complaint, noting the request was filed after expiration of all discovery deadlines and would prejudice Defendants, and Plaintiff failed to attach a proposed Third Amended Complaint. *Id.* at 14.

Because the Magistrate Judge made no findings against Plaintiff based on discovery issues, Plaintiff's Objections 11, 15, and 18 do not properly object to a specific finding in the Report. Accordingly, these Objections are overruled.

2.  *Objection 14: Abandonment of State Law Claims*

Finally, Plaintiff objects to the Report's finding Plaintiff abandoned her alleged state law claims of breach of contract, negligence, and defamation. Dkt. No. 291 at 28. Plaintiff asserts she

24

should have been given prior notice if her state law claims were at risk of dismissal based on abandonment, as she believed her Second Amended Complaint had been construed to include only a due process claim. *Id.* at 28-29. Because she relied on the court's prior finding that only the § 1983 claim would proceed, she did not respond to Defendants' arguments regarding the state law claims. She contends the court should not deny amendment of her complaint to more fully allege her state law claims and then claim abandonment when she did not respond to Defendants' motions on these causes of action.

Plaintiff filed her Second Amended Complaint ("SAC") on August 16, 2024. Dkt. No. 75. After it was brought into proper form and summons provided as to the new SD Defendants, the Magistrate Judge analyzed the SAC in accordance with applicable law, and construed it as asserting claims pursuant to § 1983 in violation of Plaintiff's right to due process under the Fourteenth Amendment. Dkt. No. 135 at 1. The Magistrate Judge noted in bold "**No other claims are being construed by the court as having been raised by Plaintiff in this action at this time**." *Id.* Although Plaintiff filed additional motions for leave to amend her complaint, they were denied, and thus the SAC remained the operative complaint.

However, in their motions for summary judgment, Defendants apparently failed to recognize this and so moved for summary judgment on state law claims as well as the § 1983 claim. Dkt. Nos. 247 at 16-19; 255-1 at 6-8. In her response, Plaintiff did not address the state law claims, and now argues she "reasonably relied on the court's own prior ruling" that the only claim was the § 1983 due process cause of action. Dkt. No. 291 at 29. She asserts she did not abandon her state law claims and should not be held accountable for doing so, as in the Report. *See* Dkt.

25

No. 286 at 5 n.1 ("Thus, even if the [state law] claims were properly before the court, Plaintiff has abandoned them [by failing to respond to Defendants' arguments on summary judgment].").

The court finds this objection is moot. Although the Magistrate Judge addressed Defendants' position on the state law claims in a footnote and found Plaintiff abandoned her claims "if they were properly before the court," these claims were <u>not</u> before the court and summary judgment was not granted as to the state law claims. *Id.* The court finds Plaintiff did not abandon her state law claims, as she could not do so because the claims were not properly before the court on summary judgment. However, because this finding has no impact on the ultimate disposition of the case, Plaintiff's Objection 14 is overruled as moot.

26

## CONCLUSION

After a review of the record, the applicable law, the Report and Recommendation of the Magistrate Judge, and Plaintiff's Objections, the court agrees summary judgment should be granted. Accordingly, the court adopts the Report by reference in this Order except as to abandonment of Plaintiff's state law claims. For the reasons set forth above, Defendants' motions for summary judgment (Dkt. Nos. 247, 255) are granted in their entirety as to Plaintiff's claims for violation of due process pursuant to § 1983 and for retaliation, against all Defendants.[11] This case is dismissed with prejudice.

**IT IS SO ORDERED.**

s/Cameron McGowan Currie
CAMERON MCGOWAN CURRIE
Senior United States District Judge

Columbia, South Carolina
July 7, 2026

---

[11] No state law claims were construed after the Magistrate Judge's review of the SAC.

27